**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DARWING DUARTE SOTO,

Petitioner,

v. Case No. 1:26-cv-02161 KWR-GJF

WARDEN, *Cibola County Correctional Center*,
MARY DE ANDA-YBARRA, *Field Office Director, El Paso, U.S. Immigration and Customs Enforcement,*
ACTING DIRECTOR,
*Immigration and Customs Enforcement,*
TODD BLANCHE, *U.S. Attorney General, and*
MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*,

Respondents.

**ORDER GRANTING IN PART HABEAS PETITION**

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus. Petitioner is a noncitizen in ICE detention. Petitioner has been mandatorily detained without a bond hearing. As explained below, the Court concludes that Petitioner's detention is governed by the discretionary detention provision under § 1226(a) as he is not seeking admission into the United States, and he is entitled to a bond hearing. *See Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026). Moreover, his due process rights were violated when he was taken into custody without notice of the revocation of his parole. Respondents also did not conduct an individualized determination as to whether his parole should be revoked. Having reviewed the parties' pleadings, briefing, and the relevant law, the Court finds that the Petition is well-taken and therefore is **GRANTED in part.** The Court orders Respondents to release Petitioner.

**BACKGROUND**

Petitioner is a citizen of Nicaragua in ICE detention at the Cibola County Correctional Center in New Mexico. Petitioner entered the United States on or about December 13, 2022. He was paroled from custody on December 17, 2022. However, he was arrested by ICE again on September 18, 2025. A removal order was issued, and an appeal of the removal order is pending. Respondents assert that Petitioner has no criminal history. Doc. 7-1 at 2.

It appears that Petitioner has not received a bond hearing. On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lack authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). In sum, it appears that Petitioner has remained in federal immigration custody without an opportunity to have a bond hearing because his detention has been classified as mandatory under 8 U.S.C. § 1225(b).

Petitioner appears to challenge his arrest and the revocation of his parole. He asserts he was not provided any reasons for the revocation of his parole. Doc. 1 at 6. He also challenges his mandatory detention. He requests release from custody or a bond hearing. The parties appear to agree that Petitioner was paroled under 8 U.S.C. § 1182(d)(5)(A). Therefore the Court assumes he was paroled thereunder.

Respondents do not dispute that *Santillan Quiroz* is controlling here. Respondents filed a response in which they stated that they would not file a brief in opposition. They assert that if the Court does grant relief, it should grant a bond hearing pursuant to *Santillan Quiroz v. Mullin*. 180

F.4th 1226, 1251 n.13 (10th Cir. 2026). Respondents also admit that there is no evidence that individualized findings on the revocation of parole were made.

## LEGAL STANDARD

Petitioner seeks release from detention under a habeas statute, 28 U.S.C. § 2241. The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## DISCUSSION

### I. **The discretionary detention provision under 8 U.S.C. § 1226(a) applies to Petitioner, rather than the mandatory detention provision under 8 U.S.C. § 1225(b)(2)(A).**

Petitioner is entitled to a bond hearing under 8 U.S.C. § 1226(a) as he has been present in the United States for years and is not seeking admission into the United States. Mandatory detention under § 1225(b)(2)(A) only applies to noncitizens "seeking admission" into the United States. Despite this statutory language, Respondents have argued in other cases that the mandatory detention provision under § 1225(b)(2)(A) applies, as that provision covers not only those who present themselves at the border, but any noncitizen who is present in the United States without admission, pending a decision on removal. *See, e.g., Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). Here, Petitioner was detained while

present in the United States. He lived in the United States for years prior to his detention, and Respondents do not assert that he was detained at the border or detained while attempting to enter the United States. The statutory phrase "seeking admission" cannot be interpreted to apply to Petitioner, who has lived in the United States for years. *See Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *see also Barry v. Lyons*, No. 1:26-CV-00504-KWR-KRS, 2026 WL 926218, at *2-5 (D.N.M. Apr. 6, 2026); *Abdikadir v. Mullin,* No. 1:26-CV-00634 KWR-JMR, 2026 WL 895661, at *2-6 (D.N.M. Apr. 1, 2026). Respondents do not dispute that *Santillan Quiroz* is controlling here. Therefore, Petitioner is entitled to a bond hearing under § 1226(a).

Respondents do not argue that upon revocation of Petitioner's parole he was placed in mandatory detention. Although Petitioner was paroled at the border, Respondents appear to admit that under *Santillan Quiroz* he is entitled to a bond hearing. Respondents do not assert that he is detained under § 1225(b)(1). Respondents also do not present any argument or evidence that Petitioner's parole was properly revoked.

## II. **Respondents have not provided evidence that they gave Petitioner notice of the revocation of his parole.**

Respondents' re-detention of Petitioner without written notice of the termination of his parole violated his Fifth Amendment due process rights. As the Court explained in *Alcide,* which it adopts and incorporates herein, Petitioner's parole was not properly revoked as he was not provided notice of its revocation. *Alcide v. de Anda-Ybarra*, No. 1:26-CV-00249-KWR-GBW, 2026 WL 622663 (D.N.M. Mar. 5, 2026).

Petitioner asserted that he was not provided notice of the termination of his parole. Doc. 1 at 6. In response, Respondents do not assert or submit evidence that Petitioner was provided notice of any revocation. They do not assert that his parole expired. Moreover, they do not provide

evidence that they revoked his parole, provided notice of the revocation of his parole, or conducted an individualized assessment in the revocation of his parole.

## III. **Petitioner's due process rights were also violated as Respondents did not conduct an individualized assessment prior to the revocation of his parole as required under *Marczak*.**

Petitioner also appears to assert that his due process rights were violated because Respondents did not conduct an individualized assessment when revoking his parole. Doc. 1 at 6. The Court agrees. As Respondents admit, they do not have evidence that they conducted an individualized assessment as required under *Marczak* or *Sierra* prior to the revocation of his parole. *Marczak v. Greene,* 971 F.2d 510, 515 (10th Cir. 1992); *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1219 (10th Cir. 2001). *Marczak* held that an individualized assessment was required when deciding whether to grant or deny parole. *Sierra* applied *Marczak* to the discretionary revocation of parole. Respondents admit that *Marczak* may apply and no individualized assessment occurred in this case. Therefore, Petitioner's due process rights were violated because Respondents failed to conduct an individualized assessment prior to revoking his parole.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. In the immigration context, "the nature of that protection may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694. Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). However, such protections need not equate to those afforded to citizens. *Demore v. Kim*, 538 U.S. 510, 522 (2003) ("[T]his Court has firmly and repeatedly endorsed the

proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens.").

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process. *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'" (quoting *Arambula-Medina*, 572 F.3d at 828)).

It appears that Petitioner has a liberty interest in an individualized assessment prior to the discretionary revocation of his parole. Petitioner is entitled to the "procedures authorized by Congress." *Sierra*, 258 F.3d at 1218; *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.").

The relevant regulation[1] here provides:

> (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.
>
> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will

[1] As explained above, the parties appear to agree that Petitioner was paroled under § 1182(d)(5)(A). Therefore, the Court assumes he was paroled thereunder.

> constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(e)(i). Under this regulation, assuming parole has not expired, Respondents may in their discretion revoke parole. As Respondents acknowledge, *Marczak* requires that Respondents must make an individualized parole determination. *Marczak v. Greene*, 971 F.2d 510 (10th Cir. 1992). In *Sierra,* the Tenth Circuit applied *Marczak* to the discretionary revocation of parole, explaining that the Government was required to conduct an individualized assessment prior to revoking parole. *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1219 (10th Cir. 2001). Thus, it appears that under *Marczak* and *Sierra,* Petitioner has a liberty interest in an individualized assessment prior to the discretionary revocation of his parole. *See Sierra*, 258 F.3d at 1218. Here, Respondents admit they have no evidence of an individualized assessment as required under *Marczak*.

Having concluded that Petitioner has a liberty interest, the Court must then examine the adequacy of the procedure to ensure that the deprivation meets the demands of the Constitution. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The first *Mathews* factor considers the nature of the private interest at stake. Petitioner has two interests at stake. His basic interest in being free from detention is "the most elemental of

liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner's interest in the procedural protections authorized by Congress is also at stake. *See Sierra*, 258 F.3d at 1218 (quoting *United States ex rel. Knauff*, 338 U.S. at 544). Because of the gravity of these interests, the first factor weighs in favor of Petitioner.

The second *Mathews* factor considers the risk of erroneous deprivation under the procedure applied to Petitioner. Here, there exists a significant risk of the erroneous deprivation of Petitioner's parole because he was detained without an individualized assessment that revocation of his parole was appropriate. Respondents admit that they do not have evidence that they conducted an individualized assessment in Petitioner's case. Respondents have not followed the safeguards put in place by Congress in revoking Petitioner's parole, thereby creating a heightened risk of erroneous deprivation. Congress authorized these procedures for a reason, and Petitioner is entitled to their protections. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) (finding "that when Congress enacts a procedure, aliens are entitled to it" (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))). Respondents did not conduct an individualized assessment to determine whether the purposes of parole are furthered by his continued release. Therefore, the second *Mathews* factor weighs in favor of Petitioner.

Under the third *Mathews* factor, the Court must consider the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. When considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon*, 459 U.S. at 34. The Government has an interest in enforcing its immigration policies and preventing noncitizens from remaining "in the United States in violation of our law." *Demore*, 538 U.S. at

518. The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Flores*, 507 U.S. at 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

Although the Government's interest in immigration enforcement weighs heavily, the Government's interest in detaining a noncitizen, such as Petitioner, without properly revoking his parole does not weigh nearly as heavily as general, lawful immigration enforcement. The fiscal and administrative burdens—slight, if any—do not provide adequate justification for the agency foregoing procedural safeguards put in place by Congress to provide an organized process for revoking parole. The fiscal and administrative burden of following the congressionally authorized procedures to properly revoke parole pales in comparison to the cost and administrative strain caused by Respondents' decision to detain noncitizens without properly revoking their parole. Although the Government has a weighty interest in enforcing its immigration policies, such an interest does not tip the scale so far in its favor to justify its failure to follow congressionally authorized procedures. Thus, the third *Mathews* factor also weighs in favor of Petitioner.

Accordingly, the Court finds that, under the *Mathews* factors, Petitioner should have had his parole properly revoked before being arrested and re-detained.

## IV. __Remedy__.

In essence, habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) "The typical remedy is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the

power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243. The Court in its discretion finds that release is appropriate here.

Again, there is no evidence in the record demonstrating that Petitioner's parole has been properly terminated. However, the Court's opinion should not be construed as prohibiting his future detention under changed circumstances, such as if his parole is properly revoked, or if § 1231 detention applies.

**IT IS THEREFORE ORDERED** that the Petition is hereby **GRANTED in part** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Respondents shall immediately release Petitioner.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Custody Release (Doc. 9) is **DENIED** as moot.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE